UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JASON R.,[1]

                        Plaintiff,

                        Case # 19-CV-1641-FPG

v.

                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

## INTRODUCTION

Plaintiff Jason R. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 8. For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

In May 2016, Plaintiff applied for DIB under Title II of the Act with the Social Security Administration (the "SSA"). Tr.[2] 15, 94. He alleged disability beginning on October 26, 2015 due to traumatic brain injury, depression, anxiety, numbness in his left arm and hand, twitching, post-concussion syndrome, insomnia, and chronic fatigue. *Id.* On September 24, 2018, Plaintiff and a vocational expert appeared and testified at a hearing before Administrative Law Judge Lynette Gohr ("the ALJ"). Tr. 15, 29. On November 16, 2018, the ALJ issued a decision finding that

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

1

Plaintiff was not disabled. Tr. 15–29. On October 17, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe

impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 404.1520(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from October 26, 2015 through the date of the ALJ's decision. Tr. 17. At step two, the ALJ found that Plaintiff

3

had several severe impairments: post-concussion syndrome, including tinnitus and cognitive deficits, post-concussion headaches, mood disorder/depression, insomnia, and obstructive sleep apnea. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 18.

Next, the ALJ determined that Plaintiff had the RFC to perform light work with certain limitations. Tr. 19. Specifically, the ALJ found that Plaintiff could: occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and perform simple, routine tasks and make simple work-related decisions with minimal changes in work routines and processes and no strict production quotas. *Id.* The ALJ also concluded that Plaintiff could not: climb ladders, ropes, or scaffolds; work at unprotected heights or around dangerous machinery; balance; or tolerate more than moderate levels of noise as defined in the Dictionary of Occupational Titles and its related publications. *Id.* The ALJ further noted that Plaintiff should avoid working with bright lights or flickering lights such as would be experienced welding or cutting metals. *Id.* At steps four and five, the ALJ found that Plaintiff was not capable of performing his past relevant work but that there were other jobs that existed in significant numbers in the national economy that he could perform. Tr. 27. The ALJ therefore concluded that Plaintiff had not been disabled from October 26, 2015 through the date of the decision. Tr. 28.

**II.   Analysis**

Plaintiff argues that the ALJ erred in assessing his RFC because it was not supported by substantial evidence, specifically a medical opinion; because the ALJ mischaracterized Plaintiff's activities of daily living; and because the ALJ's RFC determination fails to account for the number of workdays Plaintiff would have missed in the relevant period due to medical appointments. ECF No. 6-1 at 21–29. The Court disagrees.

### A. Medical Opinion Evidence

A claimant's RFC reflects what he "can still do despite his . . . limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). An RFC determination need not "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). "While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted).

Plaintiff argues that the ALJ traversed this standard by failing to support her assessment of Plaintiff's physical limitations with a competent medical opinion. ECF No. 6-1 at 21–24; ECF No. 9 at 2–6. Plaintiff relies on a case in which the ALJ's RFC determination was not supported by any competent opinion and was not otherwise supported by the record. *See Ippolito v. Comm'r of Soc. Sec.*, No. 18-CV-403, 2019 WL 3927453, at *4–5 (W.D.N.Y. Aug. 19, 2019). But as acknowledged in that case, there are circumstances where an ALJ's RFC determination need not be supported by a specific medical opinion, particularly where the record contains sufficient evidence from which the ALJ could assess a claimant's RFC. *See, e.g.*, *Pellam v. Astrue*, 508 F. App'x 87, 90–91 (2d Cir. 2013) (summary order) (upholding an ALJ's RFC determination where the ALJ "rejected" a consultative examiner's opinion but the "opinion largely supported the ALJ's assessment of" claimant's RFC and the RFC was supported by the treatment notes of claimant's doctors); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (summary order) (finding that, "although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination," that determination was supported by substantial evidence

because the plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations").

On August 26, 2016, John Schwab, D.O., performed a consultative neurologic examination of Plaintiff. Tr. 351. Dr. Schwab's examination revealed normal results, and he diagnosed Plaintiff with a traumatic brain injury, post-concussion syndrome, and headaches and concluded that his prognosis was fair. Tr. 352–53. Dr. Schwab opined that Plaintiff had no physical restrictions based on his findings, but "defer[ed] to psychologist." Tr. 353. The ALJ specifically gave this opinion little weight because she concluded that the medical record reflected some "rather mild exertional limitations," which she accounted for by limiting Plaintiff to light exertional activity. Tr. 25.

On May 18, 2016, Karen Smith, F.N.P., completed a physical ability assessment based on Plaintiff's reported abilities. Tr. 714–15. She noted that Plaintiff would only be able to occasionally (defined as zero to two-and-a-half hours or zero to one-third of the day) sit, stand, walk, reach, engage in fine manipulation, grasp, lift or carry up to ten pounds, push or pull up to forty pounds, climb stairs, stoop, kneel, crouch, crawl, or see. *Id.* She opined that he was unable to lift or carry more than ten pounds, to climb ladders, or to balance and that Plaintiff was unable to work in any environment due to his condition. Tr. 715.[3]

On September 18, 2018 Plaintiff's treating physician Kenneth Guth, M.D., completed a functional capacity assessment. Tr. 967. Dr. Guth opined that, primarily due to Plaintiff's fatigue, he had limitations lifting and carrying, standing and/or walking for more than four hours in a day, sitting (due to concentration), and pushing and pulling. *Id.* Dr. Guth further opined that Plaintiff

---

[3] Ms. Smith completed a second physical ability assessment on January 20, 2017. Tr. 723–24. The ALJ did not specifically discuss the second assessment, Tr. 26, but Plaintiff does not appear to argue that this amounted to error. The 2016 assessment is slightly more favorable to Plaintiff, but both assessments are substantially similar (in 2016, she opined that Plaintiff could only occasionally climb stairs or see, but in 2017, she checked a box indicating that these limitations did not apply to her diagnosis). Tr. 714–15, 723–24.

would need to lie down or recline for two or more hours in an eight-hour period. *Id.* The ALJ afforded this opinion little weight as inconsistent with Plaintiff's "reported wide range of activities of daily living." Tr. 26–27.

To the extent the ALJ's RFC assessment does not contain additional limitations, which Plaintiff has not specifically identified, it is supported by Dr. Schwab's opinion. *See Pellam*, 508 F. App'x at 90–91; *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) ("[I]t is well-settled that a consulting . . . examiner's opinion may . . . constitute substantial evidence to support a decision."). Plaintiff is correct, however, that the ALJ's RFC assessment of his physical capabilities is not directly supported by any opinion evidence. Dr. Schwab opined that Plaintiff had no limitations, and Plaintiff's treatment providers opined that he was more limited than the ALJ's RFC would suggest. "Generally speaking, when examining a claimant's functional capacity in a particular area, two diametrically opposed medical opinions will not support an ALJ's adoption of the middle ground." *Jack B. v. Comm'r of Soc. Sec.*, No. 19-CV-1202, 2021 WL 780303, at *4 (W.D.N.Y. Mar. 1, 2021) (citing *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order)). Nevertheless, where the record contains sufficient evidence from which an ALJ can assess the claimant's RFC, the ALJ may deviate from the medical opinions of record. *See, e.g.*, *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8–9 (2d Cir. 2017) (summary order) (holding that ALJ's RFC "determination was adequately supported by more than a mere scintilla of evidence" where it was not supported by a medical opinion but was supported by treatment notes and reported activities of daily living); *Tankisi v. Comm'r Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (noting that, where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity," a medical source statement or formal medical opinion is not necessarily required).

Plaintiff argues that this is not such a case because of the severity of his impairments. ECF No. 9 at 5–6. Plaintiff claims that his biggest impediments to returning to work are his fatigue and headaches, which are exacerbated by physical activity. Tr. 42–43, 80–81. But there is substantial evidence in the record supporting the ALJ's decision that Plaintiff's exertional limitations resulting form these conditions were "rather mild." Tr. 24–25.[4] The ALJ specifically cited Plaintiff's "essentially normal" clinical exams and diagnostic testing, daily activities, shifting testimony regarding symptoms,[5] and the recommendation of his treating neurologist who advised Plaintiff to engage in moderate physical activity. Tr. 24–25.

The ALJ's characterization of the evidence is substantially supported by the record. Plaintiff testified to substantial activities of daily living. Tr. 49–54, 56–68, 82–84. Plaintiff noted similar activities on a disability form he completed in June 2016. Tr. 218–22. Further, numerous examinations note relatively normal findings. Tr. 301–02, 310, 378, 467, 474, 477, 480–81, 483–84, 496, 499, 502, 507–08, 618–19, 706, 708. Other medical records indicate improvement in his headaches and fatigue. Tr. 466, 494, 501, 506, 583, 610, 614. A range of testing also returned normal results. Tr. 532, 607, 684. Further, Plaintiff was counseled on the "importance of moderate physical activity daily" by his treating neurologist. Tr. 630.

There is of course evidence in the record suggesting limitations due to headaches and fatigue, Tr. 300, 306, 309, 314, 320–31 473, 475, 504, 551, 561, 571, 574, 585–86, 592, 595, 600,

---

[4] Plaintiff does not challenge the ALJ's RFC assessment as it relates to his mental impairments. ECF No. 6-1 at 21–24; ECF No. 9 at 2–6.

[5] Although the ALJ did not cite records or elaborate as to what symptoms were shifting, Plaintiff's testimony regarding some symptoms was, at best, confusing. *See* Tr. 73–74 (testifying to lightheadedness about once or twice a month but then testifying to daily occurrences). Further, an independent medical examiner also cited some evidence that Plaintiff was exaggerating his symptoms. Tr. 895–901. Although not specifically cited by the ALJ, that independent medical examiner opined that Plaintiff "could return to some level of full[-]time employment." Tr. 950.

604, 617, 735, 759, but this evidence is not necessarily inconsistent with the ALJ's determination that, despite those limitations, Plaintiff could perform a subset of light work. Even to the extent such evidence was inconsistent with the ALJ's RFC determination, it was her role to resolve conflicting evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). "[W]hether there is substantial evidence supporting [Plaintiff]'s view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (noting that the court must "defer to the Commissioner's resolution of conflicting evidence"); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). The ALJ's determination regarding Plaintiff's RFC was reasonable and supported by substantial evidence.

      B.     *Activities of Daily Living*

Plaintiff argues that the ALJ mischaracterized his daily activities. ECF No. 6-1 at 24–27; ECF No. 9 at 7–8. The Court perceives no error in the ALJ's consideration of Plaintiff's daily activities in discounting Plaintiff's credibility and assessing Plaintiff's RFC.

"In determining whether a claimant is disabled, an ALJ considers all of her alleged symptoms and the extent to which they are consistent with the record evidence and affect her ability to perform daily activities and to work." *Torina v. Comm'r of Soc. Sec.*, No. 17-CV-1216, 2019 WL 2325078, at *5 (W.D.N.Y. May 31, 2019); *see also Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (summary order) (noting that an ALJ may make reasonable inferences from a claimant's reports of daily activities). Although a claimant "need not be an invalid" to be disabled

9

under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks omitted), an ALJ may properly consider a claimant's daily activities when assessing his claims, *Torina*, 2019 WL 2325078, at *6 (citing 20 C.F.R. § 404.1529(c)(3)(i)). "The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 05-CV-1061, 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (internal quotation marks omitted) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

Here, the ALJ specifically discussed many of Plaintiff's substantial daily activities: he assists his wife with the care of their two children; drives his son to hockey practice twice a week and attends other hockey events; runs errands, such as going to the bank and shopping; pays bills; engages in self-hygiene; "very occasionally" does laundry; does minimal yard work, such as trimming bushes and light snow removal; does light cooking; dines out occasionally; attends movies and Buffalo Sabres hockey games; plays guitar; boats occasionally during the summer; occasionally reads; and occasionally socializes with friends and family. Tr. 20–21, 23–24, 26–27, 49–54, 56–68, 82–84, 218–22. Plaintiff's participation in his son's hockey activities is particularly substantial. He has attended a week-long hockey camp in Toronto, attended a two-day hockey tournament in Pittsburgh and drove to other tournaments that were an hour to an hour and a half away, participated in a fundraiser where he stood on his feet and sold tickets for two and a half to three hours, and drove six hours to West Point for a hockey game and drove six hours back the next day. Tr. 50–54, 67–68, 83.

Citing these activities was not a mischaracterization of the record, as claimed by Plaintiff. *See Morse v. Saul*, No. 19-CV-304, 2020 WL 2781702, at *5 (W.D.N.Y. May 29, 2020) (holding

that ALJ mischaracterized plaintiff's daily activities in finding that plaintiff had the capacity to attend a political rally, but Plaintiff's attendance resulted in a seizure and a trip to an ER via ambulance). The ALJ acknowledged that some activities cause difficulties for Plaintiff, which is consistent with the record. Tr. 24, 50–54, 67–69, 71, 77, 498, 564, 707, 890. Those difficulties do not render Plaintiff's substantial daily activities irrelevant in the ALJ's evaluation of Plaintiff's credibility. Despite those difficulties, Plaintiff's activities demonstrate some capacity to function despite his impairments. Further, it is irrelevant that Plaintiff's daily activities prior to his onset date were more substantial. The ALJ found that Plaintiff impairments impacted his abilities, but merely relied upon his daily activities, among other evidence, to conclude that Plaintiff is capable of performing a range of light work. The Court finds no error in this determination.[6]

C.     *Medical Appointments*

Plaintiff also argues that the ALJ failed to account for excessive absences he would have accumulated during the relevant period due to medical appointments. ECF No. 6-1 at 28–29. Plaintiff's argument is premised entirely on the assumption that, because he had 114 medical appointments during the relevant period, he would have exceeded the maximum absenteeism that an employer would tolerate during that period. *Id.* Plaintiff "calculates" that he would have needed to miss an average of three days per month during the relevant period due to his appointments. *Id.*

---

[6] With minimal development, Plaintiff alludes to an argument that the ALJ traversed the treating physician rule by rejecting the opinion of Dr. Guth based on Plaintiff's daily activities. ECF No. 6-1 at 24–26 (citing *Harris v. Colvin*, 149 F. Supp. 3d 435, 444–45 (W.D.N.Y. 2016) (holding that ALJ inappropriately mischaracterized and relied on plaintiff's daily activities in rejecting treating physician's opinion)). To the extent this argument has been properly raised, *see Barthelemy v. Saul*, No. 18-CV-12236, 2019 WL 5955415, at *2 n.4 (S.D.N.Y. Nov. 13, 2019) ("[B]y not disputing the ALJ's findings relating to physical impairments, Barthelemy has waived any such argument."), the Court finds that the treating physician rule has not been traversed. *See Elnora C. v. Comm'r of Soc. Sec.*, No. 19-CV-1072, 2021 WL 695062, at *4–6 (W.D.N.Y. Feb. 23, 2021) (discussing treating physician rule and finding that it was not traversed even where ALJ failed to provide sufficiently "good reasons" for rejecting treating physician's opinion); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.").

As other courts have recognized in rejecting similar arguments, it is possible that such appointments could have been completed during non-work hours. *See Cavalieri v. Comm'r of Soc. Sec.*, No. 17-CV-812, 2019 WL 2710110, at *4 (W.D.N.Y. June 28, 2019) ("Plaintiff has not demonstrated she would need to miss an entire day of work for each doctor's visit, examination, or test . . . ."); *Robbins v. Saul*, No. 18-CV-6592, 2020 WL 1445854, at *4 (W.D.N.Y. Mar. 25, 2020) ("The record does not indicate . . . that any of the office visits . . . resulted in her missing any work, let alone a 'full day' of work." (collecting cases)). Plaintiff fails to cite any evidence to the contrary. For instance, Plaintiff has not cited to a medical opinion finding he would need to miss work to attend his medical appointments. *Cf. Susan B. v. Comm'r of Soc. Sec.*, No. 19-CV-80, 2021 WL 248752, at *11 (D. Vt. Jan. 26, 2021) ("Plaintiff's attendance at medical appointments is consistent with Dr. Baker's assessment that she would need to miss several days of work per month, in part to attend those appointments."). Accordingly, Plaintiff has not demonstrated the ALJ committed error in considering Plaintiff's medical appointments.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 8, is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 6, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 24, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court